UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| UNITED STATES OF AMERICA | ] | |
|---|---|---|
| | ] | |
| v. | ] | Criminal No. 2:08-CR-14-1 |
| | ] | |
| FRANCISCO GALARZA-LOPEZ | ] | |

MEMORANDUM AND ORDER

The defendant Francisco Galarza-Lopez filed a motion to suppress all evidence obtained during and after a motor vehicle stop on February 3, 2008. The Government has indicated it does not intend to introduce statements taken from Galarza-Lopez during that stop. At issue is whether the government may introduce identification of the defendant, together with all documentary evidence obtained from that identification. The government also seeks to introduce the defendant's initial statement he was Flaviano Galarza-Lopez.

A.  <u>Factual Background</u>.

On Sunday, February 3, 2008 at 10:40 a.m., Berlin Police Officer Daniel Gowans observed a large commercial truck parked with New Jersey plates and its engine running in front of Central Vermont Hospital. The driver appeared to be looking for a parking spot. Officer Gowans approached and asked the driver if he was "all set." The driver did not understand and shrugged his shoulders. Gowans asked the driver to step out of the truck. Using hand gestures the officer asked for his identification. The driver said his name was Flaviano Galarza-Lopez, born on

October 5, 1960.  The operator gave the officer either an international or Mexican drivers' license, but did not surrender any immigration documentation relating to his ability to be in the United States.

Officer Gowans called the Vermont State Police Dispatch center for a background check and to notify the Border Patrol. He also asked for assistance from the Vermont State Police Commercial Vehicle Enforcement Unit.  The record check did not locate a Flaviano Galarza-Lopez.  Based upon this information, Border patrol suspected the operator was an "Entry Without Inspection" ("EWI") and asked Gowans to detain him pending their arrival.

Berlin police transported Galarza-Lopez to the station to await the Border Patrol.  Galarza-Lopez was not handcuffed during the transport.  Officers did not interrogate him prior to Border Patrol Agent Jeff Hyde's arrival.

In the meantime, the owner of the truck, Morales Valente, returned from the hospital's emergency room.  Valente had suffered a back injury and had been treated.  Valente said he had known Galarza-Lopez from Florida and had hired him to unload the tractor trailer.  Valente said Galarza-Lopez did not drive the truck and had no license.  Valente consented to search of the truck.  A passport belonging to Flaviano Galarza-Lopez was recovered.

Cpl. Claude Marcoux of the Commercial Vehicle Enforcement Unit arrived at about 11 a.m to conduct an inspection.  He cited Valente for eleven separate violations of motor carrier regulations, including being parked in the roadway in front of the hospital.

Agent Hyde arrived at the Berlin station in approximately two hours and spoke with the defendant in Spanish.  *Miranda* warnings were not given since Hyde thought Galarza-Lopez was only subject to a civil removal proceeding.  Galarza-Lopez continued to say he was Flaviano Galarza-Lopez, but that he was from Mexico and had no documents giving him permission to be in the United States.  Prior to going to the Border patrol office, Galarza-Lopez asked to speak with Valente.  Agent Hyde agreed and took him to meet Valente.

Hyde then transported Galarza-Lopez to the Swanton Border Station to be processed as an EWI.  He was briefly questioned by Agent Robert Romano about his name and manner of entry into the United States.  During processing, the defendant's fingerprints were entered into the Department of Homeland Security's Intergrated Automated Fingerprint Identification System ("IAFIS"), resulting in the identification of the defendant as Francisco Galarza-Lopez who had previously been removed from the United States in 2002.  Since Agent Romano knew that Galarza-Lopez was subject to potential criminal prosecution, he

3

administered *Miranda* warnings.  The defendant then exercised his right to remain silent and all questioning ceased.

B.   Discussion.

The government seeks to introduce Galarza-Lopez's identification, including his fingerprints and record of conviction and deportation. The defense argues such evidence were products of an illegal detention in violation of the Fourth Amendment.  Officer Gowans detained Galarza-Lopez at the scene at the request of Border Patrol, and that detention continued until his true identity was determined.  The issue then is quite straight forward: did the placement of Galarza-Lopez in detention and its length violate the Fourth Amendment?

The initial encounter between Gowans and Galarza did not constitute a detention under the Fourth Amendment.  The truck had already been stopped, and Gowans approached the truck only to assist.  Moreover, Gowans' request for identification did not raise a Fourth Amendment concern. *United States v. Peterson*, 100 F.3d 7, 10 (2d Cir. 1996).  Galarza-Lopez's statement that he was Flaviano Galarza-Lopez was not a product of an illegal detention and is admissible.

Gowans placed Galarza-Lopez under detention prior to removal to the Berlin station.  The detention was for the precise and limited purpose of determining his status in the United States.

4

Gowans had no information that Galarza-Lopez had been deported or was in the process of committing an criminal offense. Gowans detained and transported the defendant solely for the purpose of pursuing civil deportation remedies, which then raises the complex question as to whether local law enforcement officers can be utilized to enforce civil immigration laws.

The Court need not address this novel and thorny issue. The Supreme Court has clearly held a defendant's identity is not subject to the exclusionary rule. *I.N.S. v. Lopez-Mendoza*, 468 U.S. 103, 1039 (1984) ("[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest"). *See also United States v. Toro Gudino*, 376 F.3d 997, 1001 (9th Cir. 2004) (the "fact of who a defendant is cannot be excluded, regardless of the nature of the violation leading to his identity.") The Second Circuit adopted this same rationale in *United States v. Adegbite*, 846 F.2d 834, 838-839 (2d Cir. 1988). That rule has been extended to evidence within an INS file, including evidence regarding criminal and deportation records. *United States v. Roque-Villanueva*, 175 F.3d 34, 346 (5th Cir. 1999) ("holding that defendant had no legitimate expectation of privacy in his INS file, and, therefore, had no standing to challenge its introduction into evidence.") *See also United States v. Guzman-Bruno*, 27 F.3d 420, 422 (9th Cir. 1994) ("finding that the

district court did not err when it held that neither [the defendant's] identity nor the records of his previous convictions and deportations could be suppressed as a result of the illegal arrest.").

The government seeks only to introduce Galarza-Lopez's identity and INS records. Even if he had been illegally detained, the exclusionary rule does not apply to identity and INS records, and the motion to suppress must therefore be denied.

Dated at Burlington, in the District of Vermont, this 15th day of October, 2008.

                                            <u>/s/ William K. Sessions III</u>
                                            William K. Sessions III
                                            Chief Judge, U.S. District Court